**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SUMI CHO,<br><br>    Plaintiff,<br><br>  vs.<br><br>JENNIFER ROSATO PEREA and DEPAUL UNIVERSITY,<br><br>    Defendants. | Case No. 1:18-cv-08012<br>Hon. Matthew F. Kennelly |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF PLAINTIFF'S COMMUNICATIONS WITH WITNESSES AND HER FORMER ATTORNEY

Defendants DePaul University ("DePaul") and Jennifer Rosato Perea (collectively, "Defendants") respectfully request this Court compel Plaintiff Sumi Cho ("Plaintiff") to produce documents withheld on the basis of attorney-client privilege or attorney work product because: (1) Plaintiff waived work product protection when she willingly disclosed work product to two third-parties, Margaret Montoya and Valerie Johnson; (2) Plaintiff waived attorney-client privilege by using her DePaul email account to communicate with her former attorney, Mr. Gerald Bramwell; (3) Plaintiff waived attorney-privilege by communicating with Mr. Bramwell in the presence of a coworker and third party, Terry Smith; and (4) to the extent the attorney-client privilege or work product doctrine did apply, Plaintiff waived any such protection by failing to provide a timely and sufficient privilege log that complies with Rule 26(b)(5).

## RELEVANT FACTUAL BACKGROUND

For the last thirteen months, the parties have engaged in discovery in this Equal Pay Act case (hereinafter, "EPA case") and a companion Title VII case pending before Judge John Zee, *Cho v. DePaul University, et al.*, No. 1:18-cv-08117 (hereinafter, "Title VII case"). This motion

concerns Plaintiff withholding documents on the basis of privilege claims presumably related to the Title VII case.

**I.      Plaintiff's Title VII Case Primarily Involves DePaul's Suspension of Plaintiff.**

Plaintiff, a full-time law professor at DePaul, alleges Defendants violated Title VII when, *inter alia*, DePaul imposed a one-year suspension following a seven-day internal hearing (the "Chapter 4 process")[1] because Plaintiff engaged in misconduct as defined by DePaul's Faculty Handbook.  During the Chapter 4 process, Plaintiff was represented by her then-attorney, Mr. Bramwell.  Mr. Bramwell also represented Plaintiff's coworker, Professor Smith, who also was a law professor at DePaul until September 2018, in a separate, but related, set of misconduct charges that were filed against Professor Smith.  Professor Smith left DePaul law school in September 2018 and the charges of misconduct were withdrawn.

**II.     On January 10, 2020, the Parties Engaged in a Rule 37(a)(1) and Local Rule 37.2 Conference Regarding Plaintiff's Privilege Log.**

Plaintiff's initial privilege log identified seven general categories of privileged documents, including "[v]arious e-mail and other communications sent between Plaintiff and Plaintiff's attorneys regarding the current litigation, sent during or in reasonable anticipation of litigation" and "[v]arious e-mail and other communications sent between Plaintiff, Plaintiff's attorneys, and other others [*sic*] who share a common interest privilege . . . ."  (*See* Pl.'s Mar. 15, 2019 privilege log, attached hereto as Exhibit A).  Plaintiff's initial privilege log did not include: the name and capacity of any individuals involved in the communications; the name and job title of the author; the name(s) of all person(s) who received the communication, or a copy of it, and their affiliation (if any); the date(s) on which the communications took place; or even any explanation for the

---

[1] Those proceedings were brought and governed by Chapter 4 of DePaul's Faculty Handbook.  As such, Defendants refer to those proceedings collectively as the Chapter 4 process.

privilege assertion to assess whether legal advice was conveyed, or whether the communications were actually in furtherance of the alleged common enterprise.

In an effort to resolve the dispute without the Court's intervention, Defendants' counsel sent Plaintiff's counsel a letter on December 18, 2019, describing their concerns with Plaintiff's privilege claims. (*See* Defs.' Dec. 18, 2020 correspondence, attached hereto as Exhibit B). The parties met telephonically for a discovery conference on January 10, 2020. (Joint Status Report at ¶ 3, Dkt. No. 51). Defendants hoped to resolve their concerns during the conference, but Plaintiff's counsel was unprepared to address the issues described in Defendants' December 18th letter. (*Id.*).

On January 23, 2020, Plaintiff represented via letter she would supplement her privilege log. (*Id.*) At the February 13, 2020 status hearing, Plaintiff's counsel represented to the Court Plaintiff would supplement production to address the issues in Defendants' December 18th letter sometime in the first week of March 2020. On April 11th—393 days after Plaintiff served her initial privilege log, 115 days after Defendants' December 18th discovery letter, and just 13 days before the deadline for filing discovery motions—Plaintiff served Defendants with a revised privilege log. (Pl.'s Apr. 11, 2020 privilege log, attached hereto as Exhibit C).

## III.   Plaintiff's Privilege Log Remains Insufficient.

Plaintiff's April 11th privilege log still does not include sufficient details to allow Defendants to assess Plaintiff's claims of attorney-client privilege and common interest protections. For instance, although Plaintiff continued to assert the common interest doctrine as grounds for withholding Plaintiff's communications involving Mr. Bramwell and Professor Smith, Plaintiff's April 11th privilege log failed to describe the subject matter of the communications. Rather, Plaintiff's description merely parroted the subject line of the emails Plaintiff has withheld in discovery since May 2019. A sampling of Plaintiff's deficient privilege log entries are

3

reproduced below:

| Doc. Type | Title/Description | Date | To | From | Cc/Bcc | Basis of Privilege |
|---|---|---|---|---|---|---|
| Email | Re: Draft Letter to Powers from Cho and Smith | 5/4/2017 | bramwell@fitzgeraldbramwell.com | terry.smith90@gmail.com | sumikcho@gmail.com | Attorney-Client; Common-Interest |
| Email | Re: Draft Letter to Powers from Cho and Smith | 5/4/2017 | terry.smith90@gmail.com | bramwell@fitzgeraldbramwell.com | sumikcho@gmail.com | Attorney-Client; Common-Interest |
| Email | Fwd: FW: Sumi | 5/4/2017 | bramwell@fitzgeraldbramwell.com | sumikcho@gmail.com | terry.smith90@gmail.com | Attorney-Client; Common-Interest |
| Email | Fwd: | 5/4/2017 | bramwell@fitzgeraldbramwell.com | sumikcho@gmail.com | terry.smith90@gmail.com | Attorney-Client; Common-Interest |
| Email | Fwd: | 5/4/2017 | sumikcho@gmail.com | bramwell@fitzgeraldbramwell.com | terry.smith90@gmail.com | Attorney-Client; Common- |

(Exhibit C). [2]

Plaintiff's April 11th privilege log also indicated that, while the Chapter 4 process was ongoing, Plaintiff also communicated with Mr. Bramwell using her DePaul email account on 5 occasions on February 13, 2018:

| Title/Description | Date | To | From | Cc/Bcc |
|---|---|---|---|---|
| Preliminary/Dispositive Issues that Must Be Resolved By Faculty Council | 2/13/2018 | scho@depaul.edu terry.smith90@gmail.com | bramwell@fitzgeraldbramwell.com | --- |
| Preliminary/Dispositive Issues that Must Be Resolved By Faculty Council | 2/13/2018 | terry.smith90@gmail.com bramwell@fitzgeraldbramwell.com | scho@depaul.edu | --- |
| Preliminary/Dispositive Issues that Must Be Resolved By Faculty Council | 2/13/2018 | scho@depaul.edu terry.smith90@gmail.com | bramwell@fitzgeraldbramwell.com | --- |
| Preliminary/Dispositive Issues that Must Be Resolved By Faculty Council | 2/13/2018 | bramwell@fitzgeraldbramwell.com | terry.smith90@gmail.com | scho@depaul.edu |
| Preliminary/Dispositive Issues that Must Be Resolved By Faculty Council | 2/13/2018 | terry.smith90@gmail.com | bramwell@fitzgeraldbramwell.com | scho@depaul.edu |

Third, Plaintiff asserted work product protection over communications with two third-parties, Professors Montoya and Johnson, who testified during Plaintiff's Chapter 4 hearing:

---

[2] Plaintiff did not number otherwise itemize the entries in her 120-page privilege log. For ease of reference for the Court, Defendants have highlighted the entries in Exhibit C for which Defendants specifically seek production.

| Doc. Type | Title/Description | Date | To | From | Cc/Bcc | Basis of Privilege |
|---|---|---|---|---|---|---|
| Email | virtual conversation!<br><br>(Discussing potential testimony in Chapter 4 proceedings and attorney case strategy) | 12/19/2017 | margaret.montoya0508@gmail.com | sumikcho@gmail.com | --- | Work Product |
| Email | Direct Examination Draft Attached (Discussing potential testimony in Chapter 4 proceedings and attorney case strategy) | 1/12/2019 | margaret.montoya0508@gmail.com | sumikcho@gmail.com | --- | Work Product |
| Word Document | [v2] Direct Examination for Margaret Montoya.docx | | | | | Work Product |
| Email | Public documents for my lawsuit (Discussing potential testimony in Chapter 4 proceedings and attorney case strategy) | 1/18/2019 | valjohn1@ameritech.net | sumikcho@gmail.com | --- | Work Product |

## IV. Pursuant to Rule 37(a)(1) and Local Rule 37.2, the Parties Engaged in a Telephonic Discovery Conference to Attempt to Resolve These and Other Outstanding Discovery Disputes.

After receiving Plaintiff's April 11th privilege log, in accordance with Rule 37(a)(1) and Local Rule 37.2, Defendants' counsel conferred by telephone with Plaintiff's counsel on April 20th at 2:00 p.m. regarding the privilege disputes that are the subject of this motion. Plaintiff was represented by Matt Pierce and Defendants were represented by Brian Paul. During the conference, Defendants' counsel offered a proposal to, at minimum, resolve the disputes surrounding the claims of privilege. Plaintiff's counsel stated he would discuss the proposal with his client and agreed to follow up with Defendants' counsel the following day.

On April 21st at 6:09 p.m., Plaintiff's counsel informed Defendants' counsel that Plaintiff would not agree to Defendants' proposal for resolving the privilege disputes, but indicated they would be providing additional details about the nature of the communications in Plaintiff's April 11th privilege log and were "reassessing" whether certain privilege entries discussed during the parties' conference could be produced. (Pl.'s April 21, 2020 correspondence, attached hereto as Exhibit D.) Plaintiff's counsel did not indicate when additional details would be provided or whether Plaintiff actually planned to withdraw any of her privilege objections. Plaintiff's counsel stated they did not expect Defendants "to hold off on preparing or filing a motion to compel," which Defendants understood to mean they would not be receiving additional information before

the discovery motion deadline.

## LEGAL STANDARDS ON A MOTION TO COMPEL

Rule 26 unequivocally provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In other words, a discovery request for information relevant to the subject matter of a lawsuit ***must*** be complied with, unless the information sought is protected from disclosure by the attorney-client or another applicable privilege. *See Schaap v. Exec. Indus., Inc.*, 1990 U.S. Dist. LEXIS 3839, at *2-3 (N.D. Ill. Apr. 4, 1990).

When a party fails to turn over non-privileged information, Rule 37 provides a vehicle for the requesting party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Such a motion "may be made if . . . a party fails to produce documents or fails to respond that inspection will be permitted . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). "'In ruling on motions to compel discovery, courts have consistently adopted a liberal interpretation of the discovery rules.'" *Sauer v. Exelon Generation Co.*, 2011 U.S. Dist. LEXIS 90511, at *9 (N.D. Ill. Aug. 15, 2011).

## ARGUMENT

Plaintiff should be compelled to produce: (I) documents related to communications with two non-attorney witnesses, Ms. Montoya and Ms. Johnson; (II) documents related to communications with Mr. Bramwell because: (A) Plaintiff waived privilege with respect to the identified documents by communicating with Mr. Bramwell using her DePaul email account; (B) the common interest doctrine does not apply to communications Plaintiff had with Mr. Bramwell in the presence of Professor Smith; and (III) even if the attorney-client privilege, work product doctrine and/or common interest doctrine applied in these contexts, waiver should still result

because of Plaintiff's inexcusable delay in providing a privilege log that complies with Rule 26(b)(5).[3]

## I. Plaintiff Waived Work Product Protection When She Willingly Disclosed Mr. Bramwell's Work Product to Two Third-Party Witnesses, Professor Montoya and Professor Johnson.

Plaintiff asserts the work product doctrine to shield communications Plaintiff had with two individuals who testified during the Chapter 4 hearing, Professor Montoya and Professor Johnson. Plaintiff's counsel has indicated the doctrine applies because the communications conveyed Mr. Bramwell's work product. The work product doctrine "protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 734 (N.D. Ill. 2014). Attorney work product consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). However, as with other privileges, the work product doctrine may be waived. *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003). "A waiver occurs 'when the protected communications are disclosed in a manner that ''substantially increase[s] the opportunity for potential adversaries to obtain the information.'''" *Miller UK Ltd.*, 17 F. Supp. 3d at 736. Parties may mitigate against the risk of disclosure by securing a confidentiality agreement from the person to whom the attorney's work product is disclosed. *Id.* at 738.

Here, unlike *Miller UK Ltd.*, Plaintiff does not assert that she had any confidentiality agreement with Professors Montoya or Johnson at the time of her disclosure. The communications purportedly direct both Professors Montoya and Johnson as to how to testify during the Chapter 4

---

[3] For clarity, Defendants are not moving to compel the production of communications Plaintiff had exclusively with Mr. Bramwell. (*See* Exhibit C at p. 1).

hearing and the communication to Professor Johnson purportedly relates to "publicly available documents" she should refer to for the purpose of testifying. Plaintiff had to assume that DePaul would question Professors Montoya and Johnson about communications they had with Plaintiff, or that DePaul might issue a litigation hold to Professor Johnson, a DePaul employee. Therefore, this Court should compel Plaintiff to produce the December 19th, January 12th and 18th communications with Professors Montoya and Johnson. *See Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 480 (N.D. Ill. 2002) (granting a motion to compel and noting once the client chooses to reveal attorney work product it is "too late to put the genie back into the bottle").

## II. Plaintiff Should be Compelled to Produce Documents Related to Communications with Mr. Bramwell Because Plaintiff Waived Attorney-Client Privilege.

### A. Plaintiff's Voluntary Decision to Communicate with Mr. Bramwell Using Her DePaul Email Account, Despite Knowing Those Communications Were Not Confidential, is a Waiver of the Attorney-Client Privilege.

Plaintiff claims privilege over a handful of emails with Mr. Bramwell that she sent and received using her DePaul email account. *See supra*. Yet, Plaintiff cannot claim privilege over allegedly confidential communications with Mr. Bramwell while simultaneously communicating in the presence of a third party—DePaul. In this circuit, "[t]he attorney-client privilege applies: (1) where legal advice of any kind is sought; (2) from a professional legal advisor in h[is] capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection can be waived." *Smith v. Bd. of Educ. of the City of Chi.*, 2019 U.S. Dist. LEXIS 102326, at *2-3 (N.D. Ill. June 19, 2019) (citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)). Waiver can occur in a number of ways. For instance, "the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the

presence of a third party who is not an agent of either the client or attorney." *Id. See also LG Elecs. v. Whirlpool Corp.*, 2009 WL 3294800, at *3 (N.D. Ill. Aug. 24, 2009) ("disclosure to a third party outside the scope of the privilege generally waives the protection of the attorney-client privilege by destroying the confidential nature of the communication") (citing *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 215 (N.D. Ill. 2001)). The party seeking to withhold documents on the grounds of attorney-client privilege bears the burden of establishing all of the essential elements. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

To determine whether the use of work email to communicate with an attorney operates as a waiver of the attorney-client privilege, courts in this district generally apply a four-factor balancing test considering the following: (1) whether the employer banned personal or objectionable use of company computers or email; (2) whether the employer monitored the use of the employee's computer or email; (3) whether third parties had a right of access to the computer or email; and (4) whether the employer notified the employee, or whether the employee was aware, of use and monitoring policies. *Goldstein v. Colborne Acquisition Co.*, 873 F. Supp. 2d 932, 935 (N.D. Ill. 2012). These factors are derived from the oft-cited decision in *In re: Asia Global Crossing, Ltd.*, 322 B.R. 247, 257 (S.D.N.Y. 2005), which courts in this district have adopted (hereinafter, the "*Asia Global* factors").

Here, all of the *Asia Global* factors strongly weigh in favor of waiver. First, DePaul maintains an "Acceptable Use Policy" that governs how all DePaul faculty use its computing resources. (Acceptable Use Policy, attached hereto as Exhibit E). The policy expressly covers DePaul's electronic mail systems, and clearly restricts acceptable use of all computing resources to "legitimate educational and business purposes." (*Id.*). Second, the policy makes clear that all computing resources may be monitored and, therefore, "[u]sers who wish to maintain absolute

privacy of information should transmit and store that information on and through media other than DePaul University Computer Resources." (*Id.*). Third, DePaul necessarily had a right of access to Plaintiff's work emails, as the policy states all computing resources are the property of DePaul. (*Id.*). Fourth, Plaintiff was certainly aware of this policy because it was disseminated to all employees, and DePaul's login prompt reminds employees that: "This computer system, and all related equipment, networks, and network devices are provided for authorized use only and are subject to DePaul's Acceptable Use Policy. DePaul may access and monitor university computer resources and any information stored on or transmitted through them . . . ." (*See* DePaul's login prompt, attached hereto as Exhibit F). Under these circumstances, Plaintiff could not have reasonably believed that her communications with Mr. Bramwell were confidential. Therefore, under the long-standing waiver principles established by the Seventh Circuit, and the *Asia Global* factors, this Court should compel Plaintiff to produce all email communications she had with Mr. Bramwell using her DePaul email account.

**B. The Common-Interest Privilege Does Not Protect Against the Disclosure of Communications Between Professor Smith and Cho, Even if Mr. Bramwell Was Copied.**

Plaintiff also attempts to shield e-mails between herself, Professor Smith, and Mr. Bramwell, an attorney who represented Plaintiff and Professor Smith during ***separate*** internal hearings on misconduct. The attorney-client privilege, just like any other privilege, may be waived in situations such as this: "[A]s a general matter, the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is not an agent of either the client or attorney." *Evans*, 113 F.3d at 1462.[4] A limited exception exists where the third party shares a common interest with the client.

---

[4] Plaintiff does not argue she had an attorney-client relationship with Professor Smith, nor could she.

To invoke the common interest doctrine, Plaintiff must establish she actually shares a common *legal* interest with Professor Smith. *See Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 326-27 (N.D. Ill. 2008) (common interest doctrine applies only "when two or more individuals jointly consult an attorney regarding a *mutual concern*" (emphasis added)); *Evans*, 113 F.3d at 1467 ("Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected."). "The 'common interest' doctrine allows communications that are already privileged to be shared between parties having a 'common legal interest' without a resultant waiver." *Monco v. Zoltek Corp.*, 317 F. Supp. 3d 995, 1002 (N.D. Ill. 2018). Parties may assert a common interest only where they have an identical—not merely similar—legal interest in the subject matter of a communication and the communication is made in the course of furthering the ongoing, common enterprise. *Grochocinski*, 251 F.R.D. at 327; *Evans*, 113 F.3d at 1467.

Here, the common interest doctrine does not shield Plaintiff's communications with Mr. Bramwell which were made in the presence of Professor Smith. Plaintiff and Professor Smith faced separate Chapter 4 misconduct charges and separate potential disciplinary actions. During her Chapter 4 process, Plaintiff argued it was Terry Smith, not her, who engaged in misconduct. For example, in her opening statement, Plaintiff's counsel defended Plaintiff by asserting:

██████████████████████████████████████████████████████

(Hearing Transcript at 62:24-63:2, attached hereto as Exhibit G). Plaintiff's counsel similarly argued, ██████████████████████████████████████████████████████

██████████████████████████████████████ (*Id.* at 991:24-992:2).

Plaintiff similarly testified:

██████████████████████████████████████████████████████



(*Id.* at 1637:13-23). Plaintiff apparently believes they shared a common interest in seeing that each of them were cleared of any alleged misconduct given they were accused of acting "in concert" and each faced guilt "by association." (Pl.'s First. Am. Compl. ¶¶ 65, 87(i), Dkt. No. 62.) Parties cannot possibly be aligned if one of them argues, "the other one did it." Even if Plaintiff and Professor Smith were aligned in seeking clearance of both of their names, this is not enough.

In *Evans*, the Seventh Circuit rejected a common interest claim where the plaintiff communicated with an attorney in the presence of a third party, a friend of the plaintiff who happened to be a police officer and an attorney. *Evans*, 113 F.3d at 1458, 1467. The plaintiff claimed they shared a "common interest" in establishing his innocence because the police officer faced potential disciplinary action for not reporting the plaintiff's criminal conduct, which was required of police officers. *Id.* at 1467. The Seventh Circuit flatly rejected the argument that a common interest arose simply because the police officer could potentially exonerate himself if the plaintiff were acquitted of the predicate criminal conduct. *Id.* As the Seventh Circuit aptly noted in *Evans*:

> Here Holden's purported "interest" in Evans' legal proceedings has no meaningful connection with the events and occurrences giving rise to the prosecution, Evans' defense strategies, or the legal principles involved. Indeed, it is difficult to imagine what necessity there could possibly be for the pooling or exchange of any information between Evans' defense attorneys and Holden *vis-a-vis* Holden's potential defense to a Departmental disciplinary proceeding. In short, Holden's interest in the Evans' proceedings is far too attenuated to support application of the common interest rule. As noted above, the attorney-client privilege is in derogation of the search for truth and its scope must therefore not be expansively construed. Evans' novel application of the "common interest rule" offers no sound occasion for broadening the cloak of the privilege's protection.

*Evans*, 113 F.3d at 1467-68. *See also Verigy US, Inc. v. Mayder*, 2008 WL 5063873, at \*2 (N.D. Cal. Nov. 21, 2008) (holding "a shared desire to see a party succeed in an action is insufficient to invoke the 'common interest' doctrine"). Just as in *Evans* and *Verigy*, Plaintiff's attempts to superimpose the common interest doctrine onto communications that bear no relationship to any ***common or joint legal enterprise*** must fail. Plaintiff did not share a common legal interest with Professor Smith in her defense of the Chapter 4 process and, similar to *Evans* and *Verigy*, Plaintiff's and Professor Smith's interests were, at best, "personal"—not legal—in nature. Pursuant to *Evans* and *Verigy*, this Court should thus compel Plaintiff to produce all communications she had with Mr. Bramwell in which Professor Smith was a recipient, copied or otherwise privy to the communications.[5]

### III. Even if the Attorney-Client Privilege, Work Product and Common Interest Doctrine Applied to Plaintiff's Communications, Plaintiff's Delay in Providing a Sufficient Privilege Log, Which is Devoid of Any Details About the Documents' Subject Matter, is a Waiver of the Protection.

Plaintiff failed to provide a timely or sufficient privilege log. Rule 26(b)(5) clearly states that a party claiming privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). *See also Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006); *Allendale*, 145 F.R.D. 84, 88 (N.D. Ill. 1992) ("For each document, the log should identify the date, the author

---

[5] At a minimum, even if this Court finds that Plaintiff and Professor Smith shared a common interest, that interest must necessarily be limited to the period in which Mr. Bramwell represented both individuals. DePaul eventually settled the charges against Professor Smith, and the related federal court lawsuit, pursuant to a confidential settlement agreement on September 18, 2018. Yet, Plaintiff's April 11th privilege log indicates she is claiming protection for at least one communication with Professor Smith after that date. (*See* Exhibit C at p. 120). Further, to the extent that Plaintiff claims work product protection for any documents shared with Professor Smith, that claim fails for the same reasons as stated in Section I, *supra*.

and all recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery."). "Failure to follow these rules may result in waiver of the privilege." *Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001).

Here, Plaintiff received Defendants' RFPs on April 18, 2019, knew at the time she had responsive documents that she had withheld, and yet produced only a cursory privilege log containing vague "block entries" satisfying none of the requirements of Rule 26(b)(5).[6] Nearly one year later, Plaintiff's revised privilege log fails to provide a sufficient description of the subject matter of the documents for Defendants to make an evaluation of whether the documents are privileged. *Allendale*, 145 F.R.D. at 88. *See also* Relevant Factual Background, Section III, *supra*. Plaintiff's delay, for which no reason has been provided, cannot be excused and is yet another reason she has waived the attorney-client privilege.

District courts addressing similar delays and deficiencies have found a waiver of the privilege. *See, e.g.*, *Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D 370, 383 (S.D. Ind. 2009) (finding waiver where plaintiff's privilege log was inadequate and incomplete); *Kaufman v. Am. Express Travel Related Servs.*, 2011 U.S. Dist. LEXIS 4420, at *12-16 (N.D. Ill. Jan. 14, 2011) (granting motion to compel and finding wavier even where the plaintiff asserted privilege in a timely fashion because the plaintiff failed to provide a privilege log or produce documents following meet and confer); *Applied Sys., Inc. v. N. Ins. Co.*, 1997 U.S. Dist. LEXIS 16014, at *2-3 (N.D. Ill. Oct. 3, 1997) (finding waiver where there was evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver).

---

[6] Indeed, Plaintiff's initial privilege log was so deficient in details that this Court should find it was tantamount to providing no privilege log all together.

Therefore, Plaintiff's failure to provide a timely or sufficient privilege log is another reason she has waived the privilege.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants request that this Court compel Plaintiff to produce all documents related to: (1) Plaintiff's communications with Professors Montoya and Johnson, (2) Plaintiff's communications with Mr. Bramwell using her DePaul email account, and (3) Plaintiff's communications with Mr. Bramwell and Professor Smith. Federal courts have held privileges should operate only where necessary to achieve their purposes. Those purposes are not served where, as here, a party voluntarily chooses to communicate otherwise protected communications to or in the presence of third parties, fully aware of all the attendant risks. Furthermore, even if Plaintiff's voluntary decision to communicate otherwise protected information to third parties did not defeat Plaintiff's privilege and work product claims, Plaintiff's inexcusable delay in providing a privilege log that complies with Rule 26(b)(5) is a waiver of those protections. Accordingly, Defendants' motion should be granted.

Dated: April 24, 2020

Respectfully submitted,

DePaul University and Jennifer Rosato Perea

By:  /s/ Brian P. Paul
One of Their Attorneys

Brian P. Paul
Kerryann M. Haase
Michael K. Chropowicz
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606
Telephone: 312.222.0800

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on April 24, 2020, I electronically filed the foregoing ***Defendants'
Memorandum in Support of Their Motion to Compel Production of Plaintiff's Communications
with Witnesses and Her Former Attorney*** with the Clerk of the Court using the CM/ECF system,
which will send notification of such filing to the following counsel of record:

**Margaret Ann Angelucci**
**Matthew Pierce**
Asher, Gittler, Greenfield, Cohen & D'Alba
200 West Jackson Boulevard, Suite 720
Chicago, Illinois  60606
Email: maa@ulaw.com
Email: mjp@ulaw.com

/s/ Brian P. Paul
Attorney for Defendants DePaul University
and Jennifer Rosato Perea
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois  60606
Telephone: 312.222.0800
Email: bppaul@michaelbest.com